**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL IRVINE AND CHERYL ANDERSON, individually and on behalf of all others similarly situated,<br><br><br>Plaintiff,<br>v.<br><br><br>KATE SPADE AND COMPANY., a Delaware corporation; and DOES 1-50, inclusive,<br><br><br>Defendant. | Civil Action No. 16-cv-7300<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs Daniel Irvine and Cheryl Anderson ("Plaintiffs"), by and through their undersigned attorneys, individually on behalf of themselves and on behalf of others similarly situated, bring this class action against Kate Spade and Company ("Kate Spade" or "Defendant"). Plaintiffs allege the following:

I.   **NATURE OF ACTION**

1.      This is a civil class action filed under the 28 U.S.C. 1332(d)(2) and (6) seeking monetary damages, restitution, injunctive and declaratory relief from Defendant, Kate Spade and Company, for falsely advertising original prices and corresponding price discounts for its Kate Spade Outlet Merchandise ("Outlet Merchandise"). During the Class Periods (defined below), Kate Spade advertised false former prices and false price discounts for its Kate Spade Outlet Merchandise. Plaintiffs, individually and on behalf of all others similarly situated and as defined in paragraph 51 *infra*, seek restitution and other equitable remedies including

appropriate injunctions under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. (the "FDUTPA") for violation of Florida state law and for violation of New York General Business Law ("NYGBL") § 349.  The New York Class consists of all persons who purchased Kate Spade Outlet Merchandise in the State of New York.  The Florida Class consists of all persons who purchased Kate Spade Outlet Merchandise in the State of Florida.

2.     As of 2015, Kate Spade operated 159 retail stores in North America comprising of 97 specialty boutique stores and 62 Outlet stores in the United States. There are a total of four (4) Outlet stores located in New York and seven (7) Outlet stores located in Florida.  Kate Spade's in-store advertising scheme used in its Outlet stores is the subject of this class action.

3.     During the Class Periods, Kate Spade misrepresented the existence, nature and amount of price discounts to New York and Florida consumers in its Outlet stores by purporting to offer specific percentage discounts from expressly referenced former retail prices, which were represented as "our price" retail prices. Kate Spade's in-store pricing scheme was prominently put forth on its pricing tags which touted the "our price" former retail prices on Outlet Merchandise accompanied by displays above or adjacent to its merchandise which made reference to the steep discounts that were being offered to the public from former "out price" retail prices.  The "our price" retail prices, however, did not represent prices at which the merchandise was offered for sale and did not constitute the prevailing market retail prices or values for such merchandise preceding the publication of the advertisement.

## II.    <u>KATE SPADE'S DECEPTION</u>

4.     Plaintiffs investigated Kate Spade's fraudulent advertising, marketing and pricing schemes on three fronts including:  1) in Kate Spade Outlet Stores; 2)

review of Kate Spade's and third-party retailers' websites[1];  and, 3) analysis of Kate Spade's corporate documents.

5.      Beginning in March 2016, and continuing thereafter, Plaintiffs visited Kate Spade Outlet Stores located in Deer Park, Central Valley, and Riverhead, New York, and in Estero, Florida.   These visits confirmed that Kate Spade Outlet Merchandise was uniformly advertised with an "our price" former price representation.   The Kate Spade Outlet Merchandise pricing tags are uniformly presented to the public as follows:



6.      The "our price" representation on the Outlet Merchandise price tags was then coupled with advertisements of corresponding and significant percentage

---

[1] Plaintiffs believe that although Kate Spade Outlet Merchandise may be sold by other retailers, the relevant market for determining whether Kate Spade Outlet Merchandise were sold at the "our price" prior to their sale is confined to Kate Spade's stores. However, Plaintiffs' investigation of Kate Spade's pricing scheme includes details from third-party retailers.

discounts ranging from 20% to 70% off, as exemplified by the following signs strategically placed above or adjacent to the Outlet Merchandise.



7.     Furthermore, upon check-out, Kate Spade provided New York and Florida consumers, including Plaintiffs, with sales receipts continuing the misrepresentations regarding false price reductions.   For example, the stated discount from the false former price was listed for each item purchased.  Below the false former price is a line with large, upper case print stating "__% OFF HANDBAG" or "__% OFF" followed by the total amount of dollar savings, as exemplified by the receipt below:



8.     Current Kate Spade Outlet Store sales staff and former Kate Spade employees have confirmed that the Outlet Merchandise designated with "our price" price tags was never offered for sale, or sold at the designated "our price."

9.     Plaintiffs' in-store visits also indicated that the Outlet Merchandise pricing tags included the unique 4-letter identifiers, "WKRU" and "WLRU."  Upon further and subsequent investigation, it was revealed that the W_RU identifiers were used internally by Kate Spade to differentiate merchandise which was manufactured exclusively for Kate Spade Outlet Stores.   Again, Kate Spade Outlet Store employees confirmed that merchandise designated with the W_RU codes was

manufactured for the "outlet only" and had not been previously offered for sale at the "our price" which is represented on the pricing tags. The Kate Spade Outlet Stores however, failed to advise Plaintiffs and other New York and Florida consumers, and do not currently advise consumers, that this unique coding signifies merchandise of inferior quality manufactured solely for the Kate Spade Outlet Stores.

10.    Kate Spade corporate documents have also confirmed that the made-for-outlet Merchandise was of inferior craftsmanship and utilized different hardware, materials, logos and product demarcations. These material differences identify Kate Spade Outlet Merchandise as made-for-outlet only, however, the differences are of such a nature as to deceive members of the general public about the particular retail channel from which they emanate.

11.    In addition, scans of Kate Spade Outlet Merchandise using a mobile application with a built-in barcode scanner has shown that Kate Spade Outlet Merchandise and their respective barcodes were not linked to Kate Spade's website, www.kadespade.com, but instead to various eBay and third-party resellers' websites. Plaintiffs' specific merchandise and other Outlet Merchandise was never previously offered either at the Kate Spade Outlet Stores, or on Kate Spade's website, at the "our price" touted by Kate Spade as a former price. Searches using the Wayback internet archive for specific dates of at least three months prior to Plaintiff's purchase confirm these facts, however these facts have also been confirmed by both current and former Kate Spade employees.

12.    Kate Spade's website also showed, and continues to show Kate Spade Outlet Merchandise being advertised with inflated former price representations but only sold at much lower prices after discounts ranging from 20% to 70% off. For some merchandise, Kate Spade's website has used the language "Designed for Kate Spade New York Outlet shops." Kate Spade's website also confirms that Kate Spade

has a separate made-for-outlet line of merchandise that is never offered at Kate Spade boutiques.  Despite this representation, the public was not informed that the merchandise manufactured for the Kate Spade New York and Florida Outlet shops was of inferior quality.  Although the Outlet Merchandise was of inferior quality, Kate Spade touted its artificially inflated former "our price" price as a value anchor to create the *illusion* of greater value.

13.    Although the relevant market here is limited to the Kate Spade Outlet Stores in New York and Florida, research of various third-party retailers' websites also indicated that Kate Spade Outlet Merchandise was advertised by third-party retailers at inflated former prices.  The research confirmed, however, that the Outlet Merchandise was never sold at the former prices by third-party retailers, but rather only sold at much lower, heavily discounted prices, in the same manner as the merchandise at Kate Spade Outlet Stores was sold.

14.    Further, Plaintiffs used the Wayback Machine internet tool located at www.archive.org to view archives of Kate Spade's website, www.katespade.com. Those archives were searched for various dates that pre-dated Plaintiffs' purchases. Archived information confirmed that Kate Spade Outlet Merchandise, including the merchandise purchased by Plaintiffs, was never sold to the public at the advertised former "our price," and did not have a value akin to the "our price" price.

15.    Kate Spade's corporate documents articulated its strategy to develop separate lines of merchandise for outlet and boutique stores through a deceptive scheme.  Plaintiffs' investigation identified Kate Spade documents that disclosed an increase in the number of styles of merchandise created for Kate Spade Outlet Stores. Kate Spade intended to sell these styles at deep discounts off of inflated and illusory former prices.  Those internal documents referenced the decision to withhold the transfer of "Full Price" items to the Outlet Stores, "cut" items from "Full Price" designs by creating replicas from material of lesser quality, price the merchandise at

7

a false former "our price," and sell it at illusive deep discounts.  An analysis of the "Margin Target" information for Kate Spade Outlet Merchandise has indicated that sales of merchandise, even at illusive steep discounts, enabled Kate Spade to meet its "Margin Targets" for profitability because the merchandise was manufactured with inferior materials at lower cost.  If the merchandise had a true value that approximated the "our price," Kate Spade could never have met its designated "Margin Targets."

16.    The internet and corporate documents evidence that, for years, Kate Spade has capitalized from giving consumers the false perception of a bargain to induce them to purchase made-for-outlet merchandise at artificially inflated prices. But for New York and Florida consumers' mistaken belief that they could obtain boutique-quality merchandise at substantially reduced outlet prices, they would not have made their purchases, or they would have paid less than they did.

17.    Plaintiffs have confirmed that the Outlet Merchandise was not sold, and continues not to be sold, at the "our price."  Instead, merchandise purchased by Plaintiffs, which bore W_RU designations and sold at Kate Spade Outlet Stores, was and is only sold at heavily reduced prices in line with the illusory discounts received by Plaintiffs – ranging from 20% to 70% off.  Kate Spade Outlet store employees continue to confirm that merchandise designated with the W_RU codes is "outlet only," was not sold in the Kate Spade boutique stores, and not sold at the "our price" price.

18.    Through its false and deceptive marketing, advertising and pricing scheme, Kate Spade violated (and continues to violate) New York and Florida law. Specifically, Kate Spade violated (and continues to violate) NYGBL § 349, which prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]," and Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*., which makes

"[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. Fla. Stat. § 501.204(2); see Fla. Stat § 501.204(2) ("due consideration and great weight are given to the interpretation of the Federal Trade Commission"); 15 U.S.C. § 45(a)(1) ("Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful").

### III.   KATE SPADE'S CONDUCT IS UNLAWFUL

19.    The Federal Trade Commission ("FTC") explicitly defines the fictitious pricing scheme employed at Kate Spade Outlet stores as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one.   If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 *C.F.R*. § 233.1.

* * *

> (a)    Many members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold. Therefore, if a reduction from this price is advertised, many people will believe that they are being offered a genuine bargain. To the extent that list or suggested retail prices do not in fact correspond to prices at which a substantial number of sales of the article in question are made, the advertisement of a reduction may mislead the consumer. A former price is not necessarily fictitious

merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.3.

20.     Similarly, New York's statutory law prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]," including, but not limited to, making false and deceptive statements about the worth, value or former prices of retail goods.

21.     Florida's statutory and regulatory law also prohibits false pricing schemes.  *Florida Statute § 817.41*, entitled "Misleading advertisements prohibited," states, in relevant part:

> (1)     It shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.

22.     Kate Spade's false price discounting scheme was disseminated to New York and Florida consumers via its in-store merchandise pricing tags and its display advertising.  The false price discounting scheme was consistent across all of Kate Spade Outlet stores, and the Kate Spade Outlet stores are uniformly designed to further accentuate the description.

23.     Kate Spade's purported discounts were false, however, because the referenced former retail prices were fabricated and did not represent Kate Spade's

true original retail prices for its Outlet Merchandise. Furthermore, the advertised former "our price" prices for Kate Spade Outlet Merchandise were not the prevailing market prices or values preceding the publication of the advertised former prices, as required by New York and Florida law.

24. Thousands of consumers in New York and Florida were victims of Kate Spade's deceptive, misleading and unlawful pricing scheme and thousands more will be deceived if Kate Spade's practices continue.

25. At all relevant times, Kate Spade has been under a duty to Plaintiffs and other New York and Florida consumers similarly situated to disclose the truth about its reference "our price" prices and illusory discounts.

26. Kate Spade fraudulently concealed from, and intentionally failed to disclose to, Plaintiffs and other similarly situated New York and Florida consumers the truth about its advertised price discounts and former prices.

27. The facts which Kate Spade misrepresented and/or failed to disclose (and which Kate Spade continues to misrepresent and/or fail to disclose) are facts that a reasonable person would consider material, i.e., facts which contribute to a reasonable person's decision to purchase apparel and accessories. Kate Spade's false representations about original "our price" prices and false representations about purported savings, discounts and bargains are objectively material to the reasonable consumer.

28. Kate Spade knew that its comparative price advertising was false, deceptive, and misleading as defined by state and federal statutory and regulatory laws.

29. Plaintiffs relied upon such false representations of original "our price" prices and discounts when purchasing apparel at the referenced Kate Spade Outlet Store. Plaintiffs, including New York and Florida consumers, would not have made their purchases, or would have paid less for the Outlet Merchandise they did

purchase, but for Kate Spade's false representation of original "our price" prices and illusory price discounts.

30.     Plaintiffs reasonably and justifiably acted and relied to their detriment on Kate Spade's false original "our price" price representations and failure to disclose, and concealment of, the truth about Kate Spade's false price-comparison advertising scheme in purchasing Kate Spade Outlet Merchandise from its Outlet Stores.

31.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who purchased merchandise at Kate Spade Outlet stores in New York and Florida. Plaintiffs seek to stop the dissemination of Kate Spade's false, deceptive and misleading advertising, correct the false and misleading perception that Kate Spade has created in the minds of consumers, and to obtain monetary redress and injunctive relief for those who have purchased Kate Spade Outlet Merchandise in New York and Florida.

## IV.   PARTIES

32.     Plaintiff, DANIEL IRVINE, is an individual who is a citizen of the city of Smith Town, in the County of Suffolk, New York.  In reliance on Kate Spade's false and deceptive advertising, marketing and pricing schemes, Mr. Irvine purchased a handbag bearing the 4-letter identifier, "WKRU," from the Kate Spade Outlet store located in Deer Park, on July 16 2016, and as detailed herein was damaged as a result thereof.

33.     Plaintiff, CHERYL ANDERSON, is an individual who is a citizen of the city of Cape Coral, in Lee County, Florida.  In reliance on Kate Spade's false and deceptive advertising, marketing and pricing schemes, Ms. Anderson purchased an item bearing the 4 letter identification WKRU from the Kate Spade Outlet store located in Estero, Florida, on March 8, 2015, and as detailed herein was damaged as a result thereof.

34.     Defendant KATE SPADE AND COMPANY is a publicly traded corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 2 Park Avenue, New York, New York, 10016 and registered to do business in the State of New York.  According to its Form 10-K for the fiscal year ending January 3, 2015, Kate Spade and Company "designs and markets accessories and apparel under three global, multichannel lifestyle brands: Kate Spade New York, KATE SPADE SATURDAY and JACK SPADE."  Kate Spade transacts domestic direct-to-consumer sales "through [its] own retail and outlet stores and e-commerce websites."

35.     Plaintiffs are informed and believe that each co-defendant, by and through its officers, directors or managing agents ratified, authorized and approved, expressly or implicitly, all of the conduct alleged herein.

36.     When in this Complaint reference is made to any act of "Kate Spade" or "Defendant," such shall be deemed to mean that officers, directors, agents, employees, or representatives of Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## V.    **JURISDICTION AND VENUE**

37.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 *U.S.C.* §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the members of the putative Class exceed $5 million, exclusive of costs, and at least one of the members of each proposed Class is a citizen of a different state than Kate Spade and Company.  The total number of members of each proposed Subclass is greater than one hundred (100).

38.     The Southern District of New York has personal jurisdiction over Kate Spade and Company because its principal place of business is located in New York, New York: it is licensed and doing business in the State of New York, authorized to do business in New York and registered with the New York Secretary of State.

39.     Venue is proper in the United States District Court, Southern District of New York because Kate Spade and Company has its principal place of business in New York, New York, and a substantial amount of the unlawful marketing decisions that are the subject of this action were made in the State of New York.

40.     The misrepresentations and unfair business practices forming the basis of the claims of Plaintiffs and the Classes emanated from the corporate headquarters of Kate Spade and Company and the vast majority of documents and a significant number of witnesses are all located in New York.

## VI.   FACTUAL ALLEGATIONS

41.     Outlet malls have largely replaced warehouse stores – which typically maintained an inventory of defective and excess merchandise.  Outlet malls have gained popularity amongst consumers for offering merchandise at deep discounts.[2]

42.     Whereas, traditionally, warehouse outlet stores carried merchandise that was intended for sale at their boutique store counterparts but were not purchased, in an effort to drive higher profit margins, retailers such as Kate Spade began using company-owned outlet stores to sell merchandise made exclusively for sale at the outlets and never intended to be sold at non-outlet stores.  In fact, 82% of merchandise at outlet centers is made specifically for the outlets.[3]

---

[2] *See*, e.g. http://www.forbes.com/sites/investopedia/2012/12/29/7-tips-for-outlet-mall-shopping/; last visited March 9, 2016.  "Although the sign says 65% off the retail price, it is likely that you would have never paid the retail price anyway."

[3] *See*, e.g. http://www.dailyfinance.com/2010/11/02/10-things-outlet-malls-wont-tell-you/; last visited March 9, 2016.  "These changes mean outlets are no longer a place to 'dump the crummy stuff' … says Anne Coughlan, a marketing professor at Northwestern's Kellogg School of Management.  In fact, 82% of merchandise at outlet centers are made specifically for the outlets, says NPD Group retail analyst Marshal Cohen."

43.   On July 16, 2016, Mr. Irvine entered the Kate Spade Outlet store located in Deer Park, New York.  He observed that handbags were advertised with price tags that represented an "our price" value.  Beside the handbags he observed a sign indicating a 50% plus an additional 20% discount applicable to all handbags. Believing the "our price" to be a genuine former price and that he could purchase a handbag for significantly less than what that merchandise was worth and normally sold for in the retail marketplace, Mr. Irvine was induced to purchase a handbag which was offered at a price significantly lower than its stated former price and purported former value.

44.   Specifically, relying on Kate Spade's misrepresentations and false and deceptive advertising, Mr. Irvine purchased a handbag[4] that had an attached Kate Spade price tag,[5] bearing the 4-letter identifier, "WKRU," and representing it to have a former price and value of $179.00 that was advertised in the store at a total discount of 70%, leaving a purchase price of $71.60 for the handbag.   Mr. Irvine believed and relied on the fact that he was obtaining the handbag at 70% off the former price and that the handbag previously sold for and had a value of $179.00 by Kate Spade.   The purported former "our price" price and corresponding price reduction and savings were false and deceptive, as the prevailing retail price and value of the handbag prior to Plaintiff's purchase of the handbag was not the $179.00 former "our price" represented by Kate Spade.  Plaintiff would not have purchased the handbag in the absence of Kate Spade's misrepresentations, or Plaintiff would have paid less than he did for the handbag.  Consequently, Mr. Irvine and similar consumers who have made purchases at the Kate Spade Outlets located in New York, have been personally victimized by and suffered economic injury as a direct result of Kate Spade's unlawful, unfair and fraudulent conduct.

---

[4] *See* Exhibit A to this Complaint.
[5] *See* Exhibit B to this Complaint.

45.     Furthermore, upon check-out on July 16, 2016, Kate Spade provided Mr. Irvine with a sales receipt containing the same misrepresentation regarding the false former price and price reduction on the handbag he purchased.  The false former price is set forth on the line item following the quantity count.  Below the false former price is a line with large, upper case print stating "50% + 20% OFF," followed by the promised savings of $107.40 for the handbag.[6]

46.     Mr. Irvine would not have purchased the handbag in the absence of Kate Spade's misrepresentations, or Plaintiff would have paid less had he been aware that the representations regarding the former value of the product were untrue. Consequently, Mr. Irvine, and similarly situated New York consumers, have been personally victimized by and suffered economic injury as a direct result of Kate Spade's unlawful, unfair and fraudulent conduct.

47.     On March 8, 2016, Plaintiff Anderson visited the Kate Spade Outlet Store located in Estero, Florida.  She observed that handbags were advertised with price tags that represented an "our price" value.  Above and/or next to the handbags she observed a sign indicating a 50% discount applicable to the handbag she was contemplating to purchase, with another sign indicating "Take an additional 20% off hand bags."  Believing the "our price" to be an original price and that she could purchase a handbag for significantly less than what that merchandise was worth and normally sold for in the retail marketplace, Ms. Anderson was induced to purchase a handbag that was offered at a price significantly lower than its stated original price and value.

48.     Specifically, relying on Kate Spade's misrepresentations and false and deceptive advertising, Ms. Anderson purchased a "Sally Newbury Lane" handbag[7]

---

[6] *See* Exhibit C to this Complaint.

[7] *See* Exhibit D to this Complaint.

that had an attached Kate Spade price tag[8] representing it to have an original price of $158.00.   Upon check out, Ms. Anderson was informed that after application of the 70% discount off the purchase of the handbag, she obtained a total discounted price or "deal" for the handbag of $63.20.  Ms. Anderson believed and relied on the fact that she was obtaining the handbag for at least 70% off the original price and that the handbag had regularly sold for $158.00 by Kate Spade.

49.   Furthermore, upon check-out on March 8, 2016, Kate Spade provided Ms. Anderson her with a sales receipt containing the same misrepresentation regarding the false original price and price reduction on the handbag she purchased. The false original price is set forth on the line item following the quantity count. Below the original price is a line with large, upper case print stating "50% + 20% OFF," followed by the promised total savings of $94.80 for the handbag.[9]

50.   Upon subsequent investigation, it was determined that neither Kate Spade Outlet or boutique stores had offered the "Sally Newbury Lane" handbag for sale for $158.00.   Upon subsequent investigation, it was also determined that the prevailing price and value of the handbag at Kate Spade Outlet and boutique stores was no more than $63.20.  The original "our price" price and corresponding price reduction and savings was false and deceptive, as the prevailing retail price and value of the handbag prior to Plaintiff's purchase of the handbag was no more than $63.20, and not the $158.00 original "our price" represented by Kate Spade.

51.   Ms. Anderson would not have purchased the handbag in the absence of Kate Spade's misrepresentations, or Plaintiff would have paid less had she been aware that the representations regarding the former value of the product were untrue. Consequently, Ms. Anderson and similar consumers who have made purchases at the Kate Spade Outlet stores located in Florida have been personally victimized by

---

[8] *See* Exhibit E to this Complaint.
[9] *See* Exhibit F to this Complaint.

and suffered economic injury as a direct result of Kate Spade's unlawful, unfair and fraudulent conduct.  Ms. Anderson [would like to shop]

52.     Plaintiffs' and Class Members' reliance upon Kate Spade's false, illusory price comparison advertising was not only reasonable, but entirely intended by Kate Spade to drive sales and profit margins.   Empirical marketing studies indicate retailers have an incentive to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings...[A] comparative price advertisement can be construed as deceptive if it makes any representation…or involves any practice that may materially mislead a reasonable consumer.[10]

In sum:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product…Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

53.     Plaintiffs would like to purchase Kate Spade Outlet Merchandise in the future.  Without tracking Kate Spade's advertisements on a daily basis for each and every item, Plaintiffs and all other New York and Florida consumers have no realistic way of knowing which of Kate Spade's current or future price comparisons are false or deceptive.  The Court should issue injunctive relief ordering Kate Spade to comply with New York and Florida's advertising laws, and prohibiting Kate Spade from using the deceptive practices discussed herein.

---

[10] *Comparative Price Advertising:  Informative or Deceptive?*, Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing*, Vol. 11, No. 1, at 52 (Spring 1992.

## VII.  CLASS ACTION ALLEGATIONS

54.     Plaintiff Daniel Irvine (the "New York Plaintiff") brings this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf the members of the proposed Classes (as defined below).  The proposed New York Class consists of:

> All consumers who, while in the State of New York, purchased Kate Spade merchandise at a Kate Spade Outlet store at a discount of at least 20% off of the stated original "our price" on the price tag and who have not received a refund or credit for their purchase(s) during the class period of three years preceding the date of the filing of this lawsuit until the date of disposition of this action. (the "New York Class").

55.     Florida Plaintiff Cheryl Anderson (the "Florida Plaintiff"), also brings this action pursuant to Rule 23(a), (b)(2) and (b)(3) on behalf of a proposed Florida Class which consists of:

> All consumers who, while in the State of Florida, purchased Kate Spade merchandise at a Kate Spade Outlet store at a discount of at least 20% off of the stated original "our price" on the price tag and who have not received a refund or credit for their purchase(s) during the class period of four years preceding the date of the filing of this lawsuit until the date of disposition of this action. (the "Florida Class").

56.     Paragraphs 54 and 55 are collectively referred to herein as the Classes.

57.     The claims asserted herein are applicable to all consumers who purchased Kate Spade merchandise at Kate Spade Outlet stores in New York and Florida that had Kate Spade price tags that stated an "our price" and were never offered at the stated original "our price" and were advertised as 20% off or more.

58.     There is a well-defined community of interest among members of the

New York Class and the Florida Class, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

59.     Notice can be provided to the members of the New York Class and all members of the Florida Class through publication or otherwise using techniques and a form of notice to those customarily used in consumer class actions arising under New York and Florida state case and the applicable federal law.

60.     Excluded from members of the Classes are Kate Spade, its parents, subsidiaries, affiliates, officers and directors, any entity in which Kate Spade has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

61.     *Numerosity*:  The members of the New York Class and the Florida Class are so numerous that joinder is impractical.  The New York Class and the Florida Class consist of thousands of members, the precise number of which is within the knowledge of, and can be ascertained by, resort to Kate Spade's records.  Therefore, the Classes are sufficiently numerous that joinder of all members of the New York Class and the Florida Class in a single action is impracticable under Federal Rule of Civil Procedure 23(a)(1), and the resolutions of their claims through the procedure of a class action will be of benefit to the parties and the court.

62.     *Existence and Predominance of Common Questions of Fact and Law*: This action involves numerous questions of law and fact common to members of the New York Class and the Florida Class which predominate over any questions affecting only individual members of the Classes.  These common questions of law and fact arise out of Kate Spade's practice and policy of engaging in false and deceptive advertising and pricing schemes in its Outlet stores and include, but are not limited, to the following:

20

a.  Whether, during the Class Period, Kate Spade used false regular or "our price" price tags and falsely advertised price discounts on Kate Spade Outlet Merchandise;

b.  Whether, during the Class Periods, the "our price" prices advertised by Kate Spade were the prevailing market prices for the Kate Spade Outlet Merchandise preceding the dissemination and/or publication of the advertised former prices;

c.  Whether Kate Spade engaged in unfair, unlawful and/or fraudulent business practices under New York law;

d.  Whether Kate Spade's use of false or deceptive price advertising constituted false advertising under New York Law;

e.  Whether Kate Spade engaged in unfair, unlawful and/or fraudulent business practices under Florida law;

f.  Whether Kate Spade's use of false or deceptive price advertising constituted false advertising under Florida Law; and,

g.  Whether Kate Spade made false and/or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

63.   *Superiority*:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the New York Class and the Florida Class is economically unfeasible and procedurally impracticable. Furthermore, although the aggregate damages sustained by the New York Class and the Florida Class may well be in the millions of dollars, the damages suffered by individual members of the

Classes may be relatively small as compared to the cost of litigation, and the expense and burden of individual litigation would make it difficult or impossible for individual members of the New York Class and the Florida Class to address the wrongs done to them.  The likelihood of individual members of the Classes prosecuting their own separate claims is remote and, even if every member of the New York Class and the Florida Class could afford the cost of independently litigating its claim, the cost to the court system of adjudication of such litigation by individual Plaintiffs would be substantial and unduly burdensome.  Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties with multiple trials of complex factual issues of the case.  By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the judicial system and protects the right of each member of the New York Class and the Florida Class.

64.    *Typicality*:  The Plaintiffs' claims are typical of the claims of the members of the New York Class and the Florida Class whom they seek to represent because Plaintiffs and each member of the Classes have suffered damages as a result of Kate Spade's wrongful pricing strategy when they purchased goods from Kate Spade Outlet stores that falsely conveyed a fictitious "our price" and purported discount.  Accordingly, Plaintiffs have no interests antagonistic to the interests of any other member of the classes.

65.    *Adequacy*:  Plaintiffs are adequate representatives who will fully, fairly and adequately assert and protect the interests of the Classes.  Plaintiffs have retained counsel competent and experienced in class action litigation who will zealously prosecute this matter on behalf of the Classes to its conclusion.

66.    *Ascertainability*:  Kate Spade keeps extensive computerized records of its customers.  Kate Spade has one or more databases through which a significant

majority of the members of the Classes may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

67.     All members of the Classes, including Plaintiffs, were exposed to one or more of Kate Spade's misrepresentations or omissions of material fact claiming that Outlet Merchandise with former "our price" advertised prices was in fact sold or offered at those prices.  Due to the scope and extent of Kate Spade's consistent false price advertising scheme, disseminated through an extensive, years-long campaign to New York and Florida consumers via in-store display advertising, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the York Class and the Florida Class.  In addition, it can be reasonably presumed that all members of the Classes, including Plaintiffs, affirmatively acted in response to the representations made through Kate Spade's false advertising scheme when purchasing Kate Spade Merchandise.

## FIRST CAUSE OF ACTION

### (Violation of New York General Business Law § 349)

68.     The New York Plaintiff incorporates and re-alleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

69.     The New York Plaintiff brings this claim individually and on behalf of all other New York Class Members who purchased items from Kate Spade's Outlet Stores located in New York, pursuant to New York Gen. Bus. Laws § 349 ("NYGBL § 349").

70.     The NYGBL § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

71.     Kate Spade's representation of an inflated "our price" price and

corresponding percentage discount price to New York consumers constituted a false, misleading and deceptive *illusion* of a discount.  As a result, Kate Spade has violated NYGBL § 349 by representing to members of the Class a false "our price" price and corresponding percentage discount price for Kate Spade Outlet Merchandise sold in New York.

72.    Such acts and practices are deceptive in violation of NYGBL § 349 because they induced the New York Plaintiff, and are likely to induce New York consumers, into the false belief that Kate Spade is offering Outlet Merchandise with values, discounts or bargains that exceed their true prevailing values.  Consequently, New York purchasers, including Plaintiff, reasonably believed that they were obtaining Outlet Merchandise at a bargain that regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid.  In fact, Kate Spade Outlet Merchandise never had a prevailing market price or value anywhere close to the former "our price" price advertised and was inferior in quality and craftsmanship to merchandise sold in Kate Spade's retail stores.

73.    Kate Spade also violated NYGBL § 349 by leading Plaintiff and New York consumers to believe that they were purchasing goods that had characteristics, standards, qualities and grades which they did not possess where Kate Spade created the illusion that its Kate Spade Outlet Merchandise was designed and manufactured for sale in its retail stores.  The public was not informed that the merchandise manufactured for the Kate Spade New York Outlet Stores was of inferior quality.  Although the Outlet Merchandise was of inferior quality, Kate Spade touted its artificially inflated former "our price" price as a value anchor to create the *illusion* of greater value.

74.    Kate Spade's representations about the former price and value of its Outlet Merchandise were material to the New York Plaintiff and consumers who

purchased Kate Spade Outlet Merchandise in New York. But for the fact that the New York Plaintiff and consumers ascribe an artificially higher value to the Kate Spade Outlet Merchandise, they would not have purchased them or would have paid less for them.

75.    Kate Spade's representation of an inflated "our price" price and corresponding percentage discount price deceived the New York Plaintiff and New York consumers into believing that it was offering value, discounts or bargains at Kate Spade Outlet Stores as distinct from the prevailing market value or worth of merchandise sold on the market that did not, in fact, exist.    As a result, New York purchasers, including the New York Plaintiff, reasonably perceived that they were receiving merchandise that regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception induced reasonable purchasers, including the New York Plaintiff and members of the New York Class, to buy Kate Spade Outlet Merchandise, which they otherwise would not have purchased.

76.    The New York Plaintiff and each member of the New York Class was injured in fact and lost money as a result of Kate Spade's conduct alleged herein. Kate Spade is liable to the New York Plaintiff and each member of the New York Class for actual damages or fifty dollars, whichever is greater.

77.    There was a causal connection between Kate Spade's deceptive conduct and the injuries to the New York Plaintiff and members of the New York Class.

78.    Kate Spade's unfair acts and practices have enabled it to improperly obtain money from the New York Plaintiff and members of the New York Class. As a result of this unjust enrichment, Plaintiff requests that this Court cause Kate Spade to restore this money to the New York Plaintiff and each member of the New York Class, to enjoin Kate Spade from continuing to violate NYGBL § 349 as discussed herein and/or from violating NYGBL § 349 in the future. If such an order is not

granted, the New York Plaintiff, members of the New York Class, and of the general public may be irreparably harmed and/or denied an effective and complete remedy.

## FIRST CAUSE OF ACTION

### (Per Se Violation of the Florida Deceptive and Unfair Trade Practices Act – Fla. Stat. § 501.201, et seq.)

79.    The Florida Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

80.    The Florida Plaintiff brings this claim individually and on behalf of all members of the Florida Class.

81.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Sections 501.201 to 501.213, *Florida Statutes*.  The express purpose of the Act is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Section 501.202(2).

82.    The sale of Kate Spade Outlet Merchandise falls within the meaning of "trade or commerce" within the scope of the FDUTPA, Sections 501.201 to 501.213, *Florida Statutes*.

83.    Plaintiff and members of the Florida Class are "consumer[s]" as defined by Section 501.203, *Florida Statutes*.  Each of the Kate Spade Outlet Merchandise is a "good" within the meaning of the Act.  Kate Spade is engaged in trade or commerce within the meaning of the Act.

84.    Section 501.203(3)(a) articulates that a violation occurs if the advertisement violates "the standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts."  Section 501.203(3)(c) articulates that a violation occurs if the advertisement violates "any law, statute, rule, regulation or ordinance which proscribes unfair methods of

competition, or unfair, deceptive, or unconscionable acts or practices."

85.    Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

86.    In determining what "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful, due consideration and great weight are given to the interpretation of the Federal Trade Commission.  See Fla. Stat. § 501.204(2); see Fla. Stat § 501.204(2).  The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements.  (15 *U.S.C.* § 45(a)(1) and 15 *U.S.C.* § 52(a)).  The FTC has established guidelines which prohibit false former pricing schemes, similar to Kate Spade's in all material respects, as deceptive practices that would violate the FTCA:

> (a)    One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's original price.

> (b)    A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser

should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.  16 *C.F.R.* § 233.1.

87.    Kate Spade's use of and reference to a materially false "our price" price and purported discounts of "__% off," in connection with its marketing and advertisements concerning the Kate Spade Outlet Merchandise, violated and continues to violate the FTCA, 15. *U.S.C.* § 45(a)(1) and 15 *U.S.C.* § 52(a), as well as FTC Guidelines published at Title 16, *C.F.R.* § 233.

88.    Kate Spade's representation of an inflated "our price" price and corresponding percentage discount price to consumers constituted a false, misleading and deceptive *illusion* of a discount.  As a result, Kate Spade *per se* has violated the Act by engaging in, and continuing to engage in, unfair and deceptive practices, and false advertising by representing to its customers a false and misleading "our price" price and corresponding percentage discount price for Kate Spade Outlet Merchandise.

89.    Such acts and practices are unfair because they induced the Plaintiff, and are likely to induce Florida consumers, into the false belief that Kate Spade is offering Outlet Merchandise at true discounts or bargains from genuine former prices.  Consequently, purchasers, including Plaintiff and members of the Florid Class, reasonably believed that they were obtaining merchandise at a bargain that regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid.  But for the fact that Florida consumers ascribe an artificially higher value to the Kate Spade Outlet Merchandise, they would not have purchased them.

90.     The reasonable consumer relies on Kate Spade to honestly represent the price and any associated discounts for its apparel. Unlike common law fraud, subjective evidence of reliance on the part of each putative Class member is not required under FDUPTA. *See Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000); *Nelson v. Mead Johnson Nutrition Co*., 270 F.R.D. 689, 692 (S.D. Fla. 2010); *State, Office of Atty. Gen., Dept. of Legal Affairs v. Wyndham Int'l, Inc*., 869 So. 2d 592, 598 (Fla. 1st DCA 2004); *Latman v. Costa Cruise Lines, N.V*., 758 So. 2d 699, 703 (Fla. 3d DCA 2000).  Thus, "the question is not whether the Plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstance." *Davis*, 776 So. 2d at 974; *Urquhart v.* Manatee Mem'l Hosp., No. 8:06-cv-1418, 2007 WL 781738, at *4 (M.D. Fla. Mar. 13, 2007).  Nevertheless, Plaintiff and members of the Florida Class did rely on the truth of Kate Spade's misrepresentations set forth herein and, in reliance thereon, purchased Kate Spade Outlet Merchandise.  Plaintiff and members of the Florida Class would not have made such purchases but for Kate Spade's false representations of original "our price" prices and illusory price discounts.

91.     Kate Spade's unfair acts and practices described above have directly and proximately caused injury to Plaintiff and members of the Florida Class. Pursuant to Section 501.211(1), *Florida Statutes*, Plaintiff and other members of the Florida Class seek a declaratory judgment and court order enjoining Kate Spade from continuing to engage in the above described wrongful acts and for restitution and disgorgement of all profits Kate Spade improperly maintained from Plaintiff and members of the Florida Class.

92.     Additionally, pursuant to Sections 501.211(2) and 501.2105, Florida Statutes, Plaintiff and members of the Florida Class make claims for damages, pre-judgment interest, attorney's fees and costs.  The amount of interest which is to be

calculated, is a sum certain and capable of calculation, and Plaintiff and members of the Florida Class are entitled to interest in an amount according to proof.

93.     THEREFORE, Plaintiff prays for relief as set forth below.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and on behalf of the members of the Classes request that this Court award relief against Kate Spade and Company, as follows:

1.     For an order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representatives and Plaintiffs' counsel be appointed Class Counsel;

2.     For an order enjoining Kate Spade from continuing to violate NYGBL § 349 and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Sections 501.201 to 501.213, *Florida Statutes*, as described herein;

3.     For general damages, according to proof;

4.     For actual damages or fifty dollars, whichever is greater, payable to Plaintiff and members of the New York Class for violations of NYGBL § 349;

5.     For restitution and disgorgement, according to proof;

6.     For an award of interest, including prejudgment interest at the legal rate;

7.     For reasonable attorneys' fees and costs of suit pursuant to *Florida Civil Code* Sections 501.211(2) and 501.2105; and,

8.     For such other and further relief as the Court may deem just and proper.

## IX.  DEMAND FOR JURY TRIAL

Pursuant to *Federal Rules of Civil Procedure*, Rule 38(b), Plaintiffs hereby demands a trial by jury on all issues so triable.

Date: September 19, 2016          **LAW OFFICES OF NOAH SHUBE**

By:     /s/ *Noah Shube*
          Noah Shube, Esq.

          Noah Shube
          **Law Offices of Noah Shube**
          401 Broadway, Suite 2115
          New York, NY 10013
          Main: 212.274.8638
          Fax: 917.398.1958
          nshube@nsfirm.com

          *Attorneys for Plaintiff Cheryl Anderson,*
          *individually and on behalf of all those similarly*
          *situated.*