USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/28/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                  :

DANIEL IRVINE et al.,                       :

                             Plaintiffs,      :            16-CV-7300 (JMF)

                                                  :

           -v-                     :          OPINION AND ORDER

KATE SPADE AND COMPANY,        :

                                                  :

                         Defendant.      :

                                                  :
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This putative consumer class action is one of many recent lawsuits brought to challenge allegedly deceptive pricing practices at outlet stores. In this case, Plaintiffs Daniel Irvine and Cheryl Anderson claim that they were deceived by the luxury handbag designer Kate Spade and Company ("Kate Spade"). Specifically, they allege that Kate Spade engages in a practice of marking merchandise sold at outlets with an illusory and arbitrarily higher price (listed as "Our Price"), from which a substantial "discount" is then offered. This practice, they contend, violates Section 349 of New York's General Business Law ("Section 349") and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Kate Spade now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' First Amended Complaint ("Amended Complaint"). (Docket No. 26). For the reasons explained below, Kate Spade's motion is GRANTED in part and DENIED in part.

## BACKGROUND

      The following facts, taken from the Amended Complaint, are assumed to be true for the purposes of this motion. *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001).

In 2015, Kate Spade, a handbag, clothing, and jewelry designer, operated ninety-seven specialty boutique stores and sixty-two outlet stores in the United States. (Docket No. 25 ("Am. Compl.") ¶ 2). Beginning in March 2016, Plaintiffs made purchases at Kate Spade outlets in New York and Florida. (*Id.* ¶¶ 5, 32-33). In particular, Plaintiffs purchased merchandise marked with unique four-letter identifiers (either "WKRU" or "WLRU") and advertised with two prices: Tags affixed to the goods themselves listed a figure referred to as "Our Price," while signs above or adjacent to the merchandise advertised steep discounts ranging from twenty to seventy percent off. (*Id.* ¶¶ 6, 9). Those two prices appeared again on sales receipts at the Kate Spade outlet stores, which displayed the "Our Price" figure along with a number reflecting the relevant percentage "off" the product, and a final total amount of "savings." (*Id.* ¶ 7).

According to Plaintiffs, the goods for sale at Kate Spade outlets were fundamentally different than the goods for sale at Kate Spade boutiques. Plaintiffs allege that the inventory at the outlets had never been offered for sale at the "Our Price" figure either at Kate Spade boutiques or at third-party retailers. (*Id.* ¶ 13). Citing Kate Spade outlet store employees, Plaintiffs further contend that the identifiers "WKRU" and "WLRU" were used only for merchandise manufactured exclusively for Kate Spade outlets. (*Id.* ¶ 9). Plaintiffs claim that such merchandise "was of inferior craftsmanship and utilized different hardware, materials, logos and product demarcations." (*Id.* ¶ 10). The outlet stores at issue in this case did not advise consumers that their products were manufactured exclusively for the outlets and were inferior in quality to the goods at Kate Spade boutiques and never sold at Kate Spade boutiques. (*Id.* ¶¶ 10, 17). Plaintiffs claim that they would not have made their purchases, or would have paid less than they did, but for their "mistaken belief" that they were purchasing "boutique-quality merchandise at substantially reduced outlet prices." (*Id.* ¶ 16).

## LEGAL STANDARDS

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 319 (S.D.N.Y. 2012). The Court will not dismiss any claims pursuant to Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

The parties dispute whether Plaintiffs' claims in this case are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. (See Docket No. 27 ("Def.'s Mem.") at 20-22; Docket No. 30 at 9-10). Rule 9(b) plainly does not apply to the claims under Section 349. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (holding that a claim under Section 349 is "not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the bare-bones notice-pleading requirements of Rule 8(a)" (citation omitted)); *see also Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 561 (S.D.N.Y. 2016) (continuing to apply the Rule 8 standard to Section 349 claims following *Twombly* and *Iqbal*). *But see In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2017 WL 2839154, at *28 (S.D.N.Y. June 30, 2017) (noting that some "courts have

declined to follow *Pelman* when it comes to Section 349 claims sounding in fraud"). And, "[w]hile federal district courts have split as to whether FDUTPA claims are subject to Rule 9(b)," the prevailing view is that Rule 9(b) applies only "where the gravamen of the claim sounds in fraud." *Blair v. Wachovia Mortg. Corp.*, 11-CV-566 (TBS), 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012); *see also In re Ford Fusion & C-Max Fuel Econ. Litig.*, 13-MD-2450 (KMK), 2015 WL 7018369, at *16 (S.D.N.Y. Nov. 12, 2015) ("FDUTPA claims are generally not subject to Rule 9(b), [but] where FDUTPA claims do happen to sound in fraud, federal courts will apply the heightened pleading standard of Rule 9(b)." (internal quotation marks omitted)).

Plaintiffs' claims here are not "premised on allegations of fraud," as they do not claim to "show actual reliance on the representation or omission at issue." *State of Fla., Office of Att'y Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310-11 (S.D. Fla. 2005) (internal quotation marks omitted); *see also In re Ford Fusion*, 2015 WL 7018369, at *16 (applying Rule 9(b)'s requirements where the claims "not only contain[ed] allegations of false advertising and deceptive practices, but also [contained] allegations that those practices were knowingly intended to induce reliance"). Indeed, Plaintiffs explicitly note that they do not seek to prove "subjective evidence of reliance on the part of each putative Class member." (Am. Compl. ¶ 91). And while Plaintiffs do occasionally refer to Kate Spade's "fraudulent conduct" (*e.g.*, *id.* ¶ 44), "[w]hether or not the word 'fraud' appears in the complaint is not dispositive in determining whether Rule 9(b) applies." *Myun-Uk Choi v. Tower Research Capital LLC*, 165 F. Supp. 3d 42, 47 (S.D.N.Y. 2016). Accordingly, the Court concludes that Plaintiffs need only meet the standard pleading requirements of Rule 8(a).

## DISCUSSION

The Court turns, then, to Plaintiffs' substantive claims under Section 349 and FDUTPA. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). FDUTPA similarly prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A claim under the New York law requires a plaintiff to allege that "a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009). A claim under the Florida law, meanwhile, requires a plaintiff to allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012). Notably, courts have analyzed claims brought under the two statutes together — particularly where, as here, the parties themselves do not differentiate their arguments. *See, e.g.*, *In re Ford Fusion*, 2015 WL 7018369, at *32 ("[B]ecause Defendant addresses Plaintiffs' consumer protection claims [under Section 349 and the FDUTPA] as a whole, and Plaintiffs respond in kind, the Court notes that there is no need to treat each of Plaintiffs' consumer protection claims individually."); *see also, e.g.*, *Chiarelli v. Nissan N. Am., Inc.*, No. 14-CV-4327 (NGG) (VVP), 2015 WL 5686507, at *17 (E.D.N.Y. Sept. 25, 2015) (applying substantially the same analysis to claims brought under Section 349 and FDUTPA). Accordingly, the Court will do the same.

Plaintiffs contend that Kate Spade's sales practices were deceptive in two related, but analytically distinct, ways. First, they argue that Kate Spade "misrepresented the existence, nature and amount of price discounts" in their outlet stores by "tout[ing] steep discounts" from

former retail prices that "did not constitute the prevailing market retail prices or values." (Am. Compl. ¶ 3). Plaintiffs allege that they either "would not have made their purchases," or they "would have paid less than they did," but for Kate Spade's deceptive pricing practices. (Am. Compl. ¶ 16). Second, Plaintiffs assert that Kate Spade "failed to inform consumers that the [outlet] merchandise was of inferior quality, made exclusively for sale in its Outlet Stores and was never sold in its boutique stores." (*Id.* ¶ 17). Significantly, that theory is not based on the "Our Price" labels standing alone, but rather on a message that they allegedly convey about the quality of the merchandise. Specifically, Plaintiffs allege that Kate Spade "touted its artificially inflated former 'our price' price as a value anchor to create the *illusion* of greater" quality, even though "the Outlet Merchandise was of inferior quality." (*Id.* ¶ 73; *see also id.* ¶ 10 (alleging that "Kate Spade corporate documents [would] confirm[] that the made-for-outlet Merchandise was of inferior craftsmanship and utilized different hardware, materials, logos and product demarcations")). With respect to this second theory, Plaintiffs contend that they were injured because they purchased goods that were worth even "less than" the price they paid. (*Id.* ¶ 50).

The Court will address each theory in turn.

## A.   Price Discounts

As noted above, Section 349 and the FDUTPA both require Plaintiffs to plead and prove actual injury. Such actual injury "may be shown by allegations that the plaintiff paid a 'price premium' because of the defendant's misrepresentation or by allegations that the plaintiff did not receive the product for which he bargained." *Belcastro v. Burberry Ltd.*, No. 16-CV-1080 (VEC), 2017 WL 744596, at *3 (S.D.N.Y. Feb. 23, 2017); *see, e.g.*, *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016) ("FDUTPA recovery depends on whether plaintiffs paid a price premium . . . ."); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y.

2014) (denying a motion to dismiss where the plaintiffs argued they had paid a premium for fat-free milk that actually contained fat); *Ebin v. Kangadis Food Inc.*, 13-CV-2311 (JSR), 2013 WL 6504547, at *4-5 (S.D.N.Y. Dec. 11, 2013) (denying a motion to dismiss where the plaintiffs argued they had paid a premium for "100% Pure Olive Oil" that actually contained "olive-pomace oil"); *Kacocha v. Nestle Purina Petcare Co.*, 15-CV-5489 (KMK), 2016 WL 4367991, at *2, 17 (S.D.N.Y. Aug. 12, 2016) (denying a motion to dismiss where the plaintiffs argued they had paid a premium for dog treats that they were led to believe primarily contained bacon). Critically, however, neither New York nor Florida law recognizes "an injury based on deception itself — the fact that [a] Plaintiff was deceived is not, standing alone, an 'actual injury.'" *Belcastro*, 2017 WL 744596, at *3; *see, e.g.*, *Carriuolo*, 823 F.3d at 986 (FDUTPA); *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 897 (N.Y. 1999) (Section 349).

The New York Court of Appeals's decision in *Small* is instructive. There, a putative class of plaintiffs alleged that they would not have purchased the defendants' cigarettes but for the defendants' deceptive conduct in concealing the addictive nature of nicotine. *See* 720 N.E.2d at 898. Plaintiffs, however, did not "allege that the cost of cigarettes was affected by the alleged misrepresentation." *Id.* Nor did "they seek recovery for injury to their health as a result of their ensuing addiction." *Id.* Instead, the gravamen of their claim of injury was that the "defendants' deception prevented them from making free and informed choices as consumers." *Id.* In other words, the only alleged injury was that the plaintiffs had purchased a product that they would not have purchased but for the defendants' allegedly deceptive conduct. The Court of Appeals rejected this "induced-to-purchase" theory of injury. "Without addiction as part of the injury claim," the Court opined, "there is no connection between the misrepresentation and any harm from, or failure of, the product." *Id.* To state a claim under Section 349 (and FDUTPA),

therefore, it is not sufficient for a plaintiff merely to plead that she would not have purchased a product but for a deceptive practice. *See Braynina v. TJX Cos.*, 15-CV-5897 (KPF), 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016) (collecting cases "reject[ing] the induced-purchase theory of injury that *Small* forecloses under New York law").

In light of these principles, Plaintiffs' first theory — either that they "would not have made their purchases," or that they "would have paid less than they did," but for Kate Spade's allegedly deceptive pricing practices, (Am. Compl. ¶ 16) — plainly falls short. The former assertion — that, but for the mistaken belief that they were getting a bargain, Plaintiffs would not have made their purchases at all — is squarely foreclosed by *Small*. And the latter assertion amounts to nothing more than the conclusory claim that, as a result of Kate Spade's deceptive conduct, Plaintiffs "paid more than [they were] subjectively willing to otherwise pay." *Belcastro*, 2017 WL 744596, at *5. That is, Plaintiffs seek to recover for their subjective disappointment, which is not a cognizable form of injury. *See, e.g.*, *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009) ("FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." (internal quotation marks omitted)). As Judge Caproni explained in *Belcastro*, a plaintiff's allegation that she paid more than she was subjectively willing to otherwise pay "is not the same as factual allegations that [the defendant] uses deceptive reference prices to charge consumers a higher price for the same merchandise." 2017 WL 744596, at *5. In the absence of the latter sort of allegation — for instance, that Kate Spade sells the same merchandise, *without* the deceptive "Our Price" labeling, for a lower price — Plaintiffs cannot connect any cognizable injury to Kate Spade's alleged deceptive practice. In other words, Plaintiffs do not, and cannot,

establish a valid "price premium" claim based solely on the "Our Price" tags, as they do not allege that the tagged goods commanded a higher price than goods without the tag.

## B.  Inferior Quality

By contrast, Plaintiffs' second species of claim, based on the message the "Our Price" labels allegedly convey about the quality of the goods, does pass muster.  For one thing, by alleging that Kate Spade "le[d]" them "to believe that they were purchasing goods that had characteristics, standards, qualities and grades which they did not possess," (Am. Compl. ¶ 73), Plaintiffs plausibly identify a consumer-oriented practice that is materially misleading.  To be sure, Plaintiffs do not allege that Kate Spade *explicitly* misrepresented the quality of its outlet merchandise.  Instead, they allege that the "Our Price" labels convey an *implicit* message of quality and that that message is false or misleading.  Discovery may well reveal that the proverbial "reasonable consumer acting reasonably" would not perceive that message, let alone be misled by it.  *See Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (noting that an act is misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances"); *In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d 1265, 1282 (S.D. Fla. 2010) ("[T]o state a claim under FDUTPA, the act or practice in question must be one likely to deceive a consumer acting reasonably in the same circumstances." (internal quotation marks omitted)), *aff'd sub nom. Webber v. Esquire Deposition Servs., LLC*, 439 F. App'x 849 (11th Cir. 2011).  But those are issues of fact that cannot be resolved at this stage of the litigation.  *See, e.g.*, *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) (noting that the reasonable consumer determination is "usually . . . a question of fact"); *see also Marino v. Coach, Inc.*, 16-CV-1122 (VEC), 2017 WL 3731954, at *7 (S.D.N.Y. Aug. 28, 2017) (holding

that a plaintiff stated a material misrepresentation claim where she alleged that the defendant retailer's practice of listing an illusory "Manufacturer's Suggested Retail Price" on outlet store goods "caused her to believe that she was purchasing an item of higher quality than she allegedly received").

Additionally, by alleging that the goods they purchased at the Kate Spade outlets were worth "less than" than the prices — even the discounted outlet prices — that they paid for them (Am. Compl. ¶ 45; *see also id.* ¶ 73), Plaintiffs allege a plausible, and cognizable, injury.[1] Indeed, that allegation, which the Court must accept as true for purposes of this motion, is a form of the classic "price premium" theory of injury that New York and Florida courts have repeatedly held to be valid. *See, e.g., Ebin*, 2013 WL 6504547, at *4-5 (holding that the plaintiffs alleged a cognizable injury for Section 349 purposes where they alleged that they had paid a premium for the defendant's product, labeled "100% Pure Olive Oil," and the product turned out to contain "olive-pomace oil"); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1333 (S.D. Fla. 2013) (finding that the

---

[1]     Kate Spade contends that the Court should disregard Plaintiffs' allegation that merchandise was worth "less than" the prices they paid on the ground that it is inconsistent with allegations in the original Complaint. (*See* Def.'s Mem. 8-12). That contention is overblown. In Plaintiffs' original Complaint, they had alleged that the merchandise was worth "*no more than*" the prices they paid (Docket No. 1, ¶ 50 (emphasis added)); in the operative Amended Complaint, they now allege that the merchandise was worth "*less than*" the prices they paid. (Am. Compl. ¶ 50 (emphasis added)). As a matter of logic, those allegations are only slightly inconsistent, as the description of a good as worth "less than" a particular price omits only one possibility that the "no-more-than" formulation allows — namely, that the merchandise is worth exactly the particular price. That hardly rises to the sort of "blatant[] change" or "direct[] contradict[ion]" that would warrant disregarding the new allegation. *Wallace v. N.Y.C. Dep't of Corr.*, No. 95-CV-4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996). At most, the differences between the two pleadings call for "accept[ing] the superseded pleadings but allow[ing] the factfinder to consider the earlier pleadings as admissions in due course." *Barris v. Hamilton*, 96-CV-9541 (DAB), 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999) (describing that as "the more usual and benevolent option" when confronted with "contradictory and manipulated allegations of an amended pleading").

plaintiffs' allegation that they had "paid a significant price premium for [the defendant's] DHA-fortified milk products over other comparable products" was "sufficient to allege causation and damages under the FDUTPA"); *see also, e.g.*, *Zaccagnino v. Nissan N. Am., Inc.*, 14-CV-3690 (LLS), 2015 WL 3929620, at *3 (S.D.N.Y. June 17, 2015) ("A claim that 'the price of the product was inflated as a result of the defendant's deception' is sufficient to allege injury [under Section 349]."); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292-93 (S.D.N.Y. 2015) (finding that the injury of "*the difference in value* between the [products] as advertised and the [products] as actually sold" was sufficient where the plaintiffs claimed that medicine was deceptively labeled as "clinically proven" to reduce cold symptoms); *cf. Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 51 (D. Mass. 2015) (finding no injury where the plaintiff had "paid $49.97 for a sweater that is, in fact, worth $49.97"), *aff'd*, 865 F.3d 1 (1st Cir. 2017).

## CONCLUSION

For the foregoing reasons, Kate Spade's motion to dismiss is GRANTED in part and DENIED in part. Specifically, Plaintiffs' claims under both Section 349 and FDUTPA are dismissed to the extent that they allege that Kate Spade's conduct caused them to purchase products that they otherwise would not have purchased or to pay a higher price than they were subjectively willing to otherwise pay. But Plaintiff's claims under both laws survive to the extent that they allege that Kate Spade's conduct misled them to believe that the outlet merchandise was of higher quality and value than it was in fact.

The Clerk of Court is directed to terminate Docket No. 26.


SO ORDERED.

Date:   September 28, 2017
        New York, New York

_____
JESSE M. FURMAN
United States District Judge

11